UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

IN THE MATTER OF            )
                            )
THE EXTRADITION OF          )   Misc. No. 18 MC 81148 UNA/DLB
                            )
OWEN ATHELBERT HEADLEY      )

FILED by SP D.C.
AUG 27 2018
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

COMPLAINT
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to Canada.

2. There is an extradition treaty in force between the United States and Canada, the Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, which entered into force on March 22, 1976, and which was amended by the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. Treaty Doc. No. 101-17 (1990), which entered into force on November 26, 1991, and the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001, U.S.-Can., Jan. 12, 2001, S. Treaty Doc. No. 107-11 (2002), which entered into force on April 30, 2003 (collectively referenced hereafter as the "Extradition Treaty").

3. Pursuant to the Treaty, the Government of Canada has submitted a formal request through diplomatic channels for the extradition of Owen Athelbert HEADLEY ("HEADLEY").

4. According to the information provided by the Government of Canada, HEADLEY was

1

charged with sexual assault, in violation of section 271 of the Criminal Code of Canada ("CCC"); incest, in violation of section 155(2) of the CCC; and sexual exploitation, in violation of section 153(1)(a) of the CCC.

5.      These offenses were committed within the jurisdiction of Canada. A warrant for HEADLEY's arrest was issued on September 18, 2017, by John Farnum, Justice of the Peace, at Brampton, Ontario.

6.      The warrant was issued on the basis of the following facts:

    a.      In 1999, HEADLEY had a daughter, I.H.H., with Rochelle Harris ("Harris") in Minnesota. Although HEADLEY and Harris were no longer in a relationship when I.H.H. was born, and HEADLEY moved to Florida when I.H.H. was five years old, HEADLEY continued to be a part of I.H.H.'s life. HEADLEY is identified as I.H.H.'s father on her State of Minnesota Birth Certificate.

    b.      On April 19, 2017, when I.H.H. was seventeen years old, she met up with HEADLEY in Florida, and the following day, flew with him to Canada to attend the wedding of HEADLEY's brother, arriving at Pearson International Airport at approximately 1:00 AM on April 21, 2017. HEADLEY and I.H.H. subsequently checked into a room containing two queen size beds in the Monte Carlo Hotel in Brampton, Ontario. HEADLEY paid for both I.H.H.'s flight and the hotel in Canada.

    c.      According to a videotaped statement provided by I.H.H. to the Anoka County Sheriff's Office, Minnesota, after they got into separate beds and turned out the lights to go to sleep, HEADLEY asked I.H.H. to come over to his bed and give him a goodnight hug. He then asked her to lie down with him. I.H.H. complied, and HEADLEY pulled up the covers over

them. HEADLEY then wrapped his arms around I.H.H. and expressed his love for her. He rubbed her bare breast under her shirt, removed her pants and underwear, and then rubbed her vaginal area for approximately five minutes. HEADLEY then told I.H.H. that she had got hers and asked if he could have his. He removed his clothes and began rubbing himself, including his nipples. He placed himself on top of her, rubbing his penis on her vagina. HEADLEY also grabbed I.H.H.'s hand and directed her to rub his nipples. HEADLEY then placed the tip of his penis into I.H.H.'s vagina before removing it and ejaculating onto her leg. Frozen with fear and disbelief at what was happening, I.H.H. did not try to stop him or tell him to stop.

     d.     According to I.H.H.'s statement, during the day on April 21, 2017, HEADLEY acted as though nothing had happened. At one point, however, he stated that I.H.H. was growing up to be a great woman and expressed a desire to give her a house in Barbados. I.H.H. felt that he was trying to bribe her. They flew back to Florida together on April 23, 2017, and I.H.H. returned to Minnesota. Shortly thereafter, HEADLEY sent her two hundred dollars and began calling her frequently, at one point telling her that she should be on birth control. Approximately a month after returning from Canada, I.H.H. saw a doctor, who conducted a sexually transmitted disease test that indicated I.H.H. had chlamydia. I.H.H. believes she received chlamydia from HEADLEY, as she did not have any other sexual partners. After the appointment, I.H.H. disclosed what HEADLEY had done to her to her mother. I.H.H. stated that she did not report the assault immediately out of fear that HEADLEY would leave her in Canada and out of a concern for her father's reputation.

     e.     According to I.H.H.'s statement, a similar incident had occurred in February of 2017, when she traveled to Florida to visit her father. At that time, HEADLEY touched her

3

breasts and pulled up her skirt while they were sitting on the couch together. After they went to sleep in separate bedrooms, HEADLEY called her into his bedroom to talk and rubbed her breasts under her clothing and tried to pull down her skirt as she was lying on his bed. He then tried to touch her vagina, and I.H.H. told him to stop. HEADLEY expressed his love for her, apologized, and asked her not to tell anyone.

      f.      In a separate videotaped statement provided to the Anoka County Sherriff's Office, I.H.H.'s mother, Harris, stated that I.H.H. had disclosed HEADLEY's assault in Canada after she had learned that she had chlamydia. Harris noted that HEADLEY would often rub his own nipples when she and he had had intimate relations during their relationship. Harris believes that the two hundred dollars HEADLEY sent to I.H.H. following the assault was hush money.

      g.      In a videotaped statement provided to the Anoka County Sherriff's Office, I.H.H.'s older half-sister, Ravesha Harris ("Ravesha"), stated that HEADLEY began calling her frequently after the April 2017 trip to Canada to discuss I.H.H. I.H.H. disclosed both the assault in Canada and the previous incident in Florida to Ravesha following I.H.H.'s diagnosis with chlamydia. I.H.H. expressed disbelief at what her father had done to her.

      h.      Passport and border crossing information confirms that HEADLEY flew from Fort Lauderdale, Florida, to Toronto, Ontario, on April 20, 2017, and returned on April 23, 2017.

      i.      On May 17, 2017, a detective with the Peel Regional Police, Special Victim's Unit, in Ontario, contacted HEADLEY by phone to inform him of the pending investigation against him. HEADLEY stated that he would not return to Canada to face any criminal charges.

      j.      On February 12, 2018, a detective with the Peel Regional Police, Special Victim's Unit, in Ontario, showed I.H.H. a photograph taken from HEADLEY's Florida driver's license

and a still image of HEADLEY taken from video surveillance at the Monte Carlo Hotel in Brampton, on April 23, 2017. I.H.H. confirmed that her father, HEADLEY, was the man in both images.

7.   HEADLEY may be found within the jurisdiction of this Court at 2655 Dorson Way, Delray Beach, Florida, 33445.

8.   Katherine C. Fennell, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that the offenses for which extradition is demanded are provided for by the Treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in Canada, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

9.   The undersigned has reviewed the declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from Canada, and a copy of the Treaty.

10.   HEADLEY would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Canada, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

BENJAMIN GREENBERG
United States Attorney

By: _____
LOTHROP MORRIS
Assistant United States Attorney

Sworn to before me this
27th day of August, 2018

_____
THE HONORABLE DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA