UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA


IN THE MATTER OF                    )
                                    )
THE EXTRADITION OF                  )        Case No. 18-MC-81148-UNA/DLB
                                    )
OWEN ALTHELBERT HEADLEY             )

**MEMORANDUM OF LAW IN SUPPORT OF EXTRADITION**

On August 27, 2018, at the request of Canada, the United States filed a complaint for the arrest of Owen Althelbert Headley ("Headley"), with a view toward his extradition pursuant to the Extradition Treaty between the United States and Canada. *See* Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, which entered into force on March 22, 1976, and which was amended by the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. Treaty Doc. No. 101-17 (1990), and by the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001, U.S.-Can., Jan. 12, 2001, S. Treaty Doc. No. 107-11 (2002) (collectively referenced hereafter as the "Treaty"). In support of its request for Headley's extradition, Canada has submitted appropriate documents to the U.S. Department of State. *See* Docket Entry [DE#:1& 9]. By statute, this Court must hold a hearing to consider the evidence of criminality presented by Canada and to

1

determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention."  18 U.S.C. § 3184.

The United States respectfully submits this memorandum to set forth the procedural and factual background of the case and to explain the legal standards and protocols that govern extradition proceedings under 18 U.S.C. § 3184.  As detailed herein, the evidence submitted by Canada fulfills the relevant Treaty requirements.  The Court should therefore "certify the same" to the Secretary of State, who will decide whether to surrender the fugitive "according to the treaty."  *Id.*[1]

## I.     BACKGROUND

### A.     Procedural Background

Headley is wanted by Canada to stand trial for his alleged crimes of: (1) sexual assault, in violation of section 271 of the Criminal Code of Canada ("CCC"); (2) incest, in violation of section 155(2) of the CCC; and (3) sexual exploitation, in violation of section 153(1)(a) of the CCC.    These offenses correspond to violations of Florida and U.S. federal statutes, including Fla. Stat. § 794.05 (unlawful sexual activity with certain minors), Fla.

---

[1] After the Court has completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender."  *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993).   "The Secretary exercises broad discretion and may properly consider myriad factors, including humanitarian ones, affecting both the individual defendant as well as foreign relations, which the extradition magistrate may not."  *Id.*

Stat. § 794.011 (sexual battery), Fla. Stat. § 826.04 (incest), Fla. Stat. § 827.071 (sexual

performance by a child), 18 U.S.C. § 2422(a) and (b) (coercion and enticement), and 18

U.S.C. § 2423(a) (transportation with intent to engage in criminal sexual activity).

A warrant for Headley's arrest was issued on September 18, 2017, by John Farnum,

Justice of the Peace, at Brampton, Ontario, along with an information charging Headley

with the three Canadian offenses identified above.   On September 11, 2018, an amended

warrant and information were issued to correct an error with respect to Headley's birth

year.  *See* Exhibit 1.[2]

Headley was arrested in this case on August 29, 2018, in Delray Beach, Florida, on

the basis of Canada's extradition request, and is currently detained.

## B.    Factual Background

According to Canadian authorities, in 1999, Headley had a daughter, I.H.H., with

Rochelle Harris ("Harris") in Minnesota. Although Headley and Harris were no longer

in a relationship when I.H.H. was born, and Headley moved to Florida when I.H.H. was

---

[2] In particular, the original warrant and information identified Headley's birth year as 1961, based on information provided by the victim's mother, Rochelle Harris.  *See* Exhibit 1 at 4.   Through subsequent investigation, Canadian authorities determined that, although the victim's mother had provided the correct birth day and month, she had provided the incorrect birth year.  *See id.* at 5. As confirmed by Headley's driver's license and his employer, his birth year is in fact 1963.  *See id.*  The warrant and information were amended to reflect the proper birth year.

five years old, Headley continued to be a part of I.H.H.'s life. Headley is identified as I.H.H.'s father on her State of Minnesota Birth Certificate.

On April 19, 2017, when I.H.H. was seventeen years old, she met up with Headley in Florida, and the following day, flew with him to Canada to attend the wedding of Headley's brother, arriving at Pearson International Airport at approximately 1:00 AM on April 21, 2017. Headley and I.H.H. subsequently checked into a room containing two queen size beds in the Monte Carlo Hotel in Brampton, Ontario. Headley paid for both I.H.H.'s flight and the hotel in Canada.

According to a videotaped statement provided by I.H.H. to the Anoka County Sheriff's Office, Minnesota, after they got into separate beds and turned out the lights to go to sleep, Headley asked I.H.H. to come over to his bed and give him a goodnight hug. He then asked her to lie down with him. I.H.H. complied, and Headley pulled up the covers over them. Headley then wrapped his arms around I.H.H. and expressed his love for her. He rubbed her bare breast under her shirt, removed her pants and underwear, and then rubbed her vaginal area for approximately five minutes. Headley then told I.H.H. that she had got hers and asked if he could have his. He removed his clothes and began rubbing himself, including his nipples. He placed himself on top of her, rubbing his penis on her vagina. Headley also grabbed I.H.H.'s hand and directed her to rub his nipples. Headley then placed the tip of his penis into I.H.H.'s vagina before removing it

4

and ejaculating onto her leg. Frozen with fear and disbelief at what was happening, I.H.H. did not try to stop him or tell him to stop.

According to I.H.H.'s statement, during the day on April 21, 2017, Headley acted as though nothing had happened. At one point, however, he stated that I.H.H. was growing up to be a great woman and expressed a desire to give her a house in Barbados. I.H.H. felt that he was trying to bribe her. They flew back to Florida together on April 23, 2017, and I.H.H. returned to Minnesota. Shortly thereafter, Headley sent her two hundred dollars and began calling her frequently, at one point telling her that she should be on birth control. Approximately a month after returning from Canada, I.H.H. saw a doctor, who conducted a sexually transmitted disease test that indicated I.H.H. had chlamydia. I.H.H. believes she received chlamydia from Headley, as she did not have any other sexual partners. After the appointment, I.H.H. disclosed what Headley had done to her to her mother. I.H.H. stated that she did not report the assault immediately out of fear that Headley would leave her in Canada and out of a concern for her father's reputation.

According to I.H.H.'s statement, a similar incident had occurred in February of 2017, when she traveled to Florida to visit her father. At that time, Headley touched her breasts and pulled up her skirt while they were sitting on the couch together. After they went to sleep in separate bedrooms, Headley called her into his bedroom to talk and rubbed her breasts under her clothing and tried to pull down her skirt as she was lying

on his bed. He then tried to touch her vagina, and I.H.H. told him to stop. Headley expressed his love for her, apologized, and asked her not to tell anyone.

In a separate videotaped statement provided to the Anoka County Sherriff's Office, I.H.H.'s mother, Harris, stated that I.H.H. had disclosed Headley's assault in Canada after she had learned that she had chlamydia. Harris noted that Headley would often rub his own nipples when she and he had had intimate relations during their relationship. Harris believes that the two hundred dollars Headley sent to I.H.H. following the assault was hush money.

In a videotaped statement provided to the Anoka County Sherriff's Office, I.H.H.'s older half-sister, Ravesha Harris ("Ravesha"), stated that Headley began calling her frequently after the April 2017 trip to Canada to discuss I.H.H. I.H.H. disclosed both the assault in Canada and the previous incident in Florida to Ravesha following I.H.H.'s diagnosis with chlamydia. I.H.H. expressed disbelief at what her father had done to her.

Passport and border crossing information confirms that Headley flew from Fort Lauderdale, Florida, to Toronto, Ontario, on April 20, 2017, and returned on April 23, 2017.

On May 17, 2017, a detective with the Peel Regional Police, Special Victim's Unit, in Ontario, contacted Headley by phone to inform him of the pending investigation

against him. Headley stated that he would not return to Canada to face any criminal charges.

On February 12, 2018, a detective with the Peel Regional Police, Special Victim's Unit, in Ontario, showed I.H.H. a photograph taken from Headley's Florida driver's license and a still image of Headley taken from video surveillance at the Monte Carlo Hotel in Brampton, on April 23, 2017. I.H.H. confirmed that her father, Headley, was the man in both images.

## DISCUSSION

### A.    General Principles of Extradition

Extradition is primarily an executive responsibility with a specially defined role for a judicial officer, who is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge."  18 U.S.C. § 3184.  That judicial function is carried out by conducting a hearing pursuant to 18 U.S.C. § 3184.  At the hearing, the Court should consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification, as defined in the treaty, statutes and case law, have been established.  If any evidence is offered by the fugitive, the Court rules on its admissibility.  Once the evidentiary record is complete, the Court should make written findings of fact and conclusions of law as to each of the elements for certification, including separate findings

for each offense as to which extradition is sought. *Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2d Cir. 1973). Once the Court issues its certification, the Secretary of State then decides whether to surrender the fugitive to the requesting country.

In fulfilling its function under Section 3184, a judge should liberally construe the applicable extradition treaty in order to effect its purpose, namely, the surrender of fugitives to the requesting country. *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936); *Factor v. Laubenheimer*, 290 U.S. 276, 301 (1933); *Vardy v. United States*, 529 F.2d 404, 406 (5th Cir. 1976).[3] In discussing the application of this rule, a court in this District explained:

> [A] narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them.

*McElvy v. Civiletti*, 523 F. Supp. 42, 47 (S.D. Fla. 1981) (citations omitted). Accordingly, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." *Factor*, 290 U.S. at 298. The United States does not expect foreign governments to be versed in our criminal laws and procedures. *Grin v.*

---

[3] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*Shine*, 187 U.S. 181, 184 (1902).  Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).

### B.   The Requirements for Certification Are Satisfied

A court must certify a fugitive as extraditable where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought.  *See In re Extradition of Shaw*, No. 14-cv-81475, 2015 WL 3442022, at *5 (S.D. Fla. May 28, 2015) (citing *Fernandez*, 268 U.S. at 312).  Each of the elements has been met in this case.

### 1.   <u>This Court Has Authority Over the Proceedings</u>

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State."  18 U.S.C. § 3184. Consequently, both magistrate judges and district judges may render a "certification" under Section 3184.  This Court is therefore authorized to conduct the hearing in this case.  *See also* S.D. Fla. Local Rules, Magistrate J. Local R. 1(a)(3) ("Each

United States Magistrate Judge of this Court . . . may . . . [c]onduct extradition proceedings, in accordance with 18 U.S.C. § 3184.").

### 2.   This Court Has Jurisdiction Over Headley

It is also well settled that the Court has jurisdiction over a fugitive found within its jurisdictional boundaries.  18 U.S.C. § 3184 (a court "may, upon complaint made under oath, charging any person found within his jurisdiction, . . .  issue [its] warrant for the apprehension of the person so charged"); *Pettit v. Walshe*, 194 U.S. 205, 219 (1904); *Grin v. Shine*, 187 U.S. 181 (1902).  Headley was arrested in Delray Beach, Florida within the Southern District of Florida.   Accordingly, this Court has jurisdiction over this extradition.

### 3.   The Relevant Treaty Is in Full Force and Effect

Section 3184 provides for extradition in specifically defined situations, including whenever a treaty or convention for extradition is in force between the United States and the requesting state. *See* 18 U.S.C. § 3184; *see also Kastnerova v. United States*, 365 F.3d 980, 987 (11th Cir. 2004) (dismissing *habeas* petition challenging certification of extradition, because, among other reasons, district court did not err in determining extradition treaty to be valid); *In re Extradition of Martinelli Berrocal*, No. 17-22197-Civ-TORRES, 2017 WL 3776953, at *11 (S.D. Fla. Aug. 31, 2017) (noting that "every Circuit Court, including our own, has deferred to the executive branch" as to whether an extradition treaty is in force).

The government will satisfy this requirement at the extradition hearing by offering into evidence a declaration by an Attorney-Adviser for the U.S. Department of State, attesting that there is a treaty in full force and effect between the United States and Canada (*i.e.*, Canada).  The Court must defer to the Department of State's determination in that regard. *See Kastnerova*, 365 F.3d at 985-87.

### 4.   The Crimes of Conviction Are Covered by the Treaty

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the treaty.  Article 1 of the Treaty provides for the return of fugitives charged with, or convicted of, offenses covered by Article 2.  Article 2 (as amended by Article I of the 1988 Protocol), in turn, defines an offense as "extraditable" if it is "punishable by the laws of both [the United States and Canada] by imprisonment or other form of detention for a term exceeding one year or any greater punishment."  Ex. 1, 1998 Protocol, Art. I.

In assessing whether the crimes for which extradition is requested are covered by the Treaty, the Court should examine the description of criminal conduct provided by Canada and decide whether that conduct would be criminal under U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states. *See, e.g.*, *Gallo–Chamorro v. United States*, 233 F.3d 1298, 1306 (11th Cir. 2000); *United States v. Cardoso*, No. 04-mc-128, 2005 WL 1228826, *4 (M.D. Fla. May 10, 2005) ("Acts are

considered criminal in the United States if they would be unlawful under federal statutes, the law of the state where the accused is found, or by a preponderance of the states.") (citing *Wright v. Henkel*, 190 U.S. 40, 61 (1903)).  A requesting country need not establish that its crimes are identical to ours.  *Schmeer v. Warden of Santa Rosa County Jail*, No. 14-cv-285, 2014 WL 5430310, at *2 (N.D. Fla. Oct. 22, 2014) ("Dual criminality requires only that the 'particular act charged is criminal in both jurisdictions' . . .") (quoting *Collins v. Loisel*, 259 U.S. 309, 312 (1922)).

The Supreme Court noted in *Collins v. Loisel* that dual criminality is not a technical concept involving a comparison of elements of the two countries' offenses:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries.  It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. 309, 312 (1922) (emphasis added); *accord Gallo-Chamorro v. United States,* 233 F.3d 1298, 1307 (11th Cir. 2000).  In fulfilling this requirement, a requesting country is obliged neither to produce evidence on all elements of a criminal offense nor to establish that its crimes are identical to ours.  *Kelly v. Griffin*, 241 U.S. 6, 15 (1916).  Moreover, the Court should "approach challenges to extradition with a view toward finding the offense within the treaty," *McElvy*, 523 F. Supp. at 48, "because extradition treaties should be interpreted with a view to fulfil our just obligations to other powers."  *Grin*, 187 U.S. at 184.

12

An examination of the conduct described in the documents provided by Canada establishes that the offenses with which Headley was charged satisfy the dual criminality requirement and are, therefore, extraditable.  The conduct underlying the offense of sexual assault with a weapon, in violation of Article 271 of the CCC, would be punishable under Florida state law as unlawful sexual activity with certain minors in violation of Fla. Stat. § 794.05(1), sexual battery in violation of Fla. Stat. § 794.011(5)(a), and under U.S. federal law as transporting a minor to engage in sexual conduct or enticement of a minor to engage in illegal sexual conduct in violation of 18 U.S.C. § 2422(a) and (b) and 18 U.S.C. § 2423(a) if it had been committed here.  The maximum punishment is up to fifteen or thirty years' imprisonment under Florida law and up to twenty years' or life imprisonment under U.S. federal law.  Fla. Stat. § 775.082(3)(b) & (d); 18 U.S.C. § 2422; 18 U.S.C. § 2423(a).  In Canada, a violation of Article 271 of the CCC is punishable by a maximum term of up to ten years imprisonment.

The conduct underlying the offense of incest, in violation of Article 155(2) of the CCC, would be punishable under Florida state law as incest in violation of Fla. Stat. § 826.04 if it had been committed here.  The maximum punishment is up to five years' imprisonment under Florida law.  Fla. Stat. § 775.082(3)(e).   In Canada, a violation of Article 155(2) of the CCC is punishable by a maximum term of up to fourteen years imprisonment.

The conduct underlying the offenses of sexual exploitation, in violation of Article 153(1)(a) of the CCC, would be punishable under Florida state law as sexual performance by a minor in violation of Fla. Stat. § 827.071(2) and sexual battery in violation of Fla. Stat. § 794.011(8)(b), and under U.S. federal law as transporting a minor to engage in sexual conduct or enticement of a minor to engage in illegal sexual conduct in violation of 18 U.S.C. § 2422(a) and (b) and 18 U.S.C. § 2423(a) if it had been committed here.   The maximum punishment is up to fifteen years' or life imprisonment under Florida law and up to twenty years' or life imprisonment under U.S. federal law.  Fla. Stat. § 775.082(3)(d); Fla. Stat. § 794.011(8)(b); 18 U.S.C. §§ 2422 and 2423.   In Canada, a violation of Article 153(1)(a) of the CCC is punishable by a maximum term of up to fourteen years' imprisonment.

Accordingly, the crimes for which extradition is sought is encompassed by the Treaty.

5.   <u>The Evidence Establishes Probable Cause that Headley Committed the Offenses</u>

The standard of proof to find the evidence "sufficient to sustain the charge . . ." pursuant to Section 3184 is the familiar domestic requirement of probable cause.  The Court must conclude there is probable cause to believe that the crime charged by Canada was committed and that the person before the Court committed them.  *Hoxha v. Levi*, 465

F.3d 554, 561 (3d Cir. 2006); *Sindona v. Grant*, 619 F.2d 167, 175 (2d Cir. 1980). The evidence is sufficient, and probable cause is established, if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). The extradition judge's probable cause determination is "'not a finding of fact in the sense that the court has weighed the evidence and resolved disputed factual issues,'" but instead "'serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based.'" *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986) (quoting *Caplan v. Vokes*, 649 F.2d 1336, 1342 (9th Cir. 1981)).

The evidence provided by Canada in support of its request for Headley's extradition establishes probable cause that Headley committed the charged offenses. The documents submitted by Canadian authorities detail the information uncovered during their investigation of Headley's sexual assault of the minor victim. Specifically, the documents explain that—as demonstrated by the minor victim's statement to the police, and as corroborated by other witness statements—on April 21, 2018, Headley asked I.H.H., when she was seventeen years old, to come over to his bed and give him a goodnight hug. He then asked her to lie down with him. I.H.H. complied, and Headley pulled up the covers over them. Headley then wrapped his arms around I.H.H. and expressed his love for her. He rubbed her bare breast under her shirt, removed her pants

15

and underwear, and then rubbed her vaginal area for approximately five minutes. Headley then told I.H.H. that she had got hers and asked if he could have his. He removed his clothes and began rubbing himself, including his nipples. He placed himself on top of her, rubbing his penis on her vagina. Headley also grabbed I.H.H.'s hand and directed her to rub his nipples. Headley then placed the tip of his penis into I.H.H.'s vagina before removing it and ejaculating onto her leg.

### D.    The Documentary Evidence Submitted by Canada Is Alone Sufficient for Certification

The extradition hearing prescribed by 18 U.S.C. § 3184 is unique and limited in its nature.  *See, e.g.*, *Martin*, 993 F.2d at 828.  Unlike a criminal proceeding, its purpose is to decide the sufficiency of the charge under the treaty, not guilt or innocence—that is for the foreign court.  *Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Benson v. McMahon*, 127 U.S. 457, 463 (1888); *Afanasjev*, 418 F.3d at 1165.  Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition hearings.  *See* Fed. R. Crim. P. 1(a)(5) (stating that "extradition and rendition of a fugitive" are not governed by rules); Fed. R. Evid. 1101(d)(3) (evidence rules are inapplicable to "miscellaneous proceedings such as . . . extradition or rendition"); *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981).  Rather, "unique rules of wide latitude govern reception of evidence" in

extradition hearings. *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969) (citation and internal quotation marks omitted). Among these rules are the following:

1.    <u>Written Submissions Are Sufficient; No Live Witnesses Are Required</u>

Extradition treaties do not contemplate the introduction of live witness testimony at extradition proceedings because to do so "would defeat the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916). Thus, hearsay evidence is admissible at extradition hearings and may properly support a finding of extraditability. *See id.* (rejecting fugitive's claim that *ex parte* witness affidavits submitted in support of his extradition to Canada should not be considered because he had not had the opportunity to cross-examine those witnesses); *see also Collins*, 259 U.S. at 317; *United States v. Zanazanian*, 729 F.2d 624, 626-27 (9th Cir. 1980) (unsworn written statements may properly form the basis for extradition); *Simmons v. Braun*, 627 F.2d 635, 636 (2d Cir. 1980) (same). Accordingly, a finding of extraditability may be, and typically is, based entirely on the authenticated documentary evidence and information provided by the requesting government. *See, e.g., Bovio v. United States*, 989 F.2d 255, 259-61 (7th Cir. 1993) (Swedish investigator's statement sufficient to establish probable cause); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433-34 (S.D. Fla. 1993) (documents and statements sufficient for extradition to Honduras), *aff'd*, 28 F.3d 116 (11th Cir. 1994).

The certification of documents introduced during an extradition hearing is governed by the Treaty.  Article 10 (as amended by Article 2 of the 2001 Protocol) provides that the documents supporting Canada's request for extradition "shall be admitted in evidence in the examination of the request for extradition" when they "are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada."  Ex. 1, 2001 Protocol, Art. 2.  The documents filed in this case have been so authenticated (by a Senior Counsel of the Department of Justice of Canada) and certified (by the Chargé d'Affaires for the United States in Canada), and are, therefore, admissible in these proceedings.

2.  <u>Limitations on the Fugitive's Evidence</u>

Headley's opportunity to challenge the evidence introduced against his is heavily circumscribed.  He may not introduce evidence that contradicts the evidence submitted on behalf of Canada, attempt to establish an alibi, or present a defense.  *See Charlton v. Kelly*, 229 U.S. 447, 461 (1913); *see also Collins*, 259 U.S. at 316.  Moreover, procedural defenses are not permitted.  *See Bingham*, 241 U.S. at 517; *Glucksman v. Henkel*, 221 U.S. 508, 513-14 (1911) (variance between charges pending in the foreign country and the complaint filed in federal court is not a valid defense to surrender).

Instead, a fugitive's right to controvert the evidence introduced against his is "limited to testimony which explains rather than contradicts the demanding country's

proof." *United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963); *see also Collins*, 259 U.S. at 315-17; *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005) (*en banc*); *Castro Bobadilla*, 826 F. Supp. at 1433. This allowance of "explanatory evidence" and prohibition on "contradictory evidence" is rooted in the fact that an extradition judge may not weigh conflicting evidence and determine what to credit, "but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn*, 783 F.2d at 815. Issues requiring factual or credibility determinations are reserved for the courts in the requesting country to resolve after the fugitive is extradited.

3.   <u>Matters Other Than Sufficiency of the Evidence Are Generally Left to the Secretary of State; Rule of Non-Inquiry</u>

Other than the sufficiency of the evidence, all matters that may be raised by the fugitive as defenses to extradition are to be considered by the Secretary of State, not by this Court. *See* 18 U.S.C. §§ 3184, 3186. In making extradition determinations, "[t]he Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations—factors that may be beyond the scope of the magistrate judge's review." *Sidali*, 107 F.3d at 195 n.7; *see also Hurtado v. U.S. Atty. Gen.*, 401 Fed. App'x 453, 456 (11th Cir. 2010). The Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate

19

treatment in the receiving country.  *See Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999).  This is consistent with the long-held understanding that surrender of a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State," within the Executive's "powers to conduct foreign affairs."  *See In re Kaine*, 55 U.S. 103, 110 (1852).

## II.      CONCLUSION

WHEREFORE, the United States requests that the Court conduct a hearing, pursuant to 18 U.S.C. § 3184, to determine that the submission on behalf of Canada is sufficient to sustain the charges under the provisions of the applicable treaty and to certify the extradition of the fugitive for those charges to the Secretary of State for possible surrender to Canada.

Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

 s/  LOTHROP MORRIS
By: LOTHROP MORRIS
    ASSISTANT U.S. ATTORNEY
    Florida Bar # 0095044
    500 Australian Avenue, Suite 400
    West Palm Beach, FL 33401
    (561) 820-8711
    (561) 820-8777 (FAX)
    LOTHROP.MORRIS@USDOJ.GOV

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 14, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: <u>s/  LOTHROP MORRIS</u>
LOTHROP MORRIS
ASSISTANT U.S. ATTORNEY