UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-MC-81148-UNA/DLB

IN THE MATTER OF

THE EXTRADITION OF

OWEN ALTHELBERT HEADLEY

_____/

GOVERNMENT'S RESPONSE IN OPPOSITION
TO FUGITIVE'S MOTION TO COMPEL DISCOVERY

The United States of America, by Ariana Fajardo Orshan, United States Attorney for the Southern District of Florida, through Assistant United States Attorney Lothrop Morris, submits its Response in Opposition to the Fugitive's Motion to Compel Discovery. In support of its filing, the government states as follows:

As explained further below, this extradition matter is not a criminal proceeding where the normal criminal rules of discovery apply. Rather, the extradition statute, 18 U.S.C. § 3184, limits an extradition proceeding to the narrow question of whether the formal request for extradition and supporting documents submitted by the requesting country (here, by Canada) through diplomatic channels meet the requirements of the relevant treaty between the United States and the requesting country. Due to the limited nature of this inquiry, there typically is no "discovery" other than provision of the formal extradition request with supporting exhibits from the other country to counsel and court in advance of the extradition hearing. Nor does *Brady v. Maryland*, 373 U.S. 83 (1963), entitle a fugitive to request a search for potentially exculpatory material in these circumstances.

1

## I. FACTUAL BACKGROUND

On February 28, 2017, the United States filed a complaint for the extradition of Owen Althelbert Headley ("Headley"), at the request of the Government of Canada pursuant to the Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, which entered into force on March 22, 1976, and which was amended by the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. Treaty Doc. No. 101-17 (1990), which entered into force on November 26, 1991, and the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001, U.S.-Can., Jan. 12, 2001, S. Treaty Doc. No. 107-11 (2002), which entered into force on April 30, 2003 (collectively referenced hereafter as the "Extradition Treaty").

Canada has submitted a formal request for Headley's arrest, extradition, and surrender, supported by appropriate documents, to the U.S. Department of State. By statute, the Court must hold a hearing to consider the evidence of criminality presented by Canada and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. If the Court finds the evidence sufficient, it must "certify the same" to the Secretary of State, who then decides whether to surrender the fugitive "according to the treaty."[1]  *Id*

---

[1] After the Court has completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender." *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). "The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations, which the extradition magistrate may not." *Id.*

## II.     ARGUMENT

### A.     Headley Is Not Entitled to Discovery Because Extradition Is Not a Criminal Proceeding with Criminal Discovery Rights

The scope of this Court's role in an extradition hearing defined by the extradition statute is by its nature extremely limited.   The general rule, which reflects the unique nature of extradition proceedings, is that a fugitive is not entitled to discovery.  *See In re Extradition of Mainero*, 990 F. Supp. 1208, 1222 n.26 (S.D. Cal. 1997) ("Discovery is not available in extradition proceedings."); *In re Extradition of Singh*, 123 F.R.D. 108, 112–13 (D.N.J. 1987) (finding that fugitives in extradition cases "do not have a constitutional right to discovery"); *In re Extradition of Koskotas*, 127 F.R.D. 13, 27 (D. Mass. 1989) (holding that fugitives in extradition cases do not have constitutional or statutory rights to discovery).   "While the [fugitive] may offer what has been called 'explanatory testimony,' the law 'nowhere requires a magistrate to authorize compelled disclosure of sources of such explanatory testimony.'"   *Peryea v. United State*s, 782 F. Supp. 937, 939–40 (D. Vt. 1991) (citing *Gill v. Imundi*, 747 F. Supp. 1028, 1040 (S.D.N.Y. 1990)).   Thus, there is no right to discovery related to whether probable cause exists.

Further, there is nothing in the extradition treaty between the United States and Canada that would independently require or authorize general criminal discovery.   An extradition proceeding is governed exclusively by the applicable treaty and by statute.   Article 9(2) of the United States' Treaty with Canada limits the showing required of Canada here to:

> a description of the person sought, a statement of the facts of the case, the text of
> the laws of [Canada] describing the offense and prescribing the punishment for
> the offense, and a statement of the law relating to the limitation of the legal
> proceedings.

Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983.   Article 9(3) further provides that, in the case of a person who has not yet been

3

convicted, the request must also be accompanied by a "warrant of arrest" and by "such evidence as, according to the laws of the Requested State, would justify his arrest and committal for trial if the offense had been committed there." The "country seeking extradition is not required to produce all of its evidence" at the extradition hearing. *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986).

Thus, an extradition hearing is more akin to a pre-indictment committal hearing, although an extradition hearing is procedurally narrower in scope. In an extradition matter, "'[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.'" *In re Extradition of Santos*, 795 F. Supp. 2d 966, 972 (C.D. Cal. 2011) (quoting *Collins*, 259 U.S. at 316). "The magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *In re Santos*, 795 F. Supp. 2d at 972 (citing *Quinn*, 783 F.2d at 815 (noting the "well established rule that extradition proceedings are not to be converted into a dress rehearsal for trial."))[2]

In the extradition context, evidence that contradicts the requesting government's proof may not properly be considered by the magistrate. Evidence offered to establish an affirmative defense is similarly inadmissible. *See Shapiro v. Ferrandina*, 478 F.2d 894, 900–01 (2d Cir. 1973) ("[E]vidence of alibi or of facts contradicting the demanding country's proof or of a defense such as insanity may properly be excluded from the Magistrate's hearing."). A fugitive contesting

---

[2] *But see Quinn*, 783 F.2d at 815 ("The credibility of witnesses and the weight to be accorded their testimony is solely within the province of the extradition magistrate."). Notably, however, such an assessment by the extradition magistrate is of the evidence as submitted, without consideration of any contradictory evidence.

4

probable cause may seek only to explain perceived weaknesses in the foreign government's evidence as presented, not introduce contradictory evidence in an effort to create weaknesses.

Although other courts have held that a magistrate has the discretion to order limited discovery in certain circumstances in an extradition proceeding, *see Quinn*, 783 F.2d at 815, such discretion is guided by this narrow context of the actual issues involved. For example, in *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005), the Ninth Circuit affirmed the denial of discovery about the use of the death penalty in Thailand in an extradition to that nation because the issue "was outside the purview" of the magistrate's role in determining whether the fugitive was extraditable. *Id*.

### B.     *Brady v. Maryland* Does Not Apply to This Extradition Proceeding

Headley additionally raises *Brady v. Maryland* and the Constitution as the authority for this Court to order discovery, requesting a search through the files of the Departments of State and Justice looking for potentially exculpatory material to produce. The Ninth Circuit has stated that in extradition cases there is no requirement that exculpatory evidence be produced. *See Merino v. U.S. Marshal*, 326 F.2d 5, 13 (9th Cir. 1963); *Sacirbey v. Guccione*, No. 05 Cv. 2949(BSJ)(FM), 2006 WL 2585561, at *14 (S.D.N.Y. Sept. 7, 2006), *rev'd on other grounds*, 589 F.3d 52 (2d Cir. 2009); *Montemayor v. United States*, 329 F. Supp. 2d 883, 888 (S.D. Tex. 2004). Indeed, *Brady* goes to ultimate issues of guilt or innocence, not probable cause. *See United States v. Williams*, 504 U.S. 36, 52–54 (1992) (finding that the prosecutor does not have a duty to present exculpatory evidence to the grand jury).

In this matter, Headley is not a criminal defendant, and the extradition proceeding is not a trial in which guilt or innocence is determined. Therefore, *Brady* is simply inapplicable. *See In re Singh*, 123 F.R.D. at 112; *Merino v. U.S. Marshal*, 326 F.2d 5, 12 (9th Cir. 1963)) ("Courts

have expressly held that Brady principles do not pertain to extradition hearings because no determination of guilt or innocence is being made."). The relevance of Headley's *Brady* demand is dubious at best because he does not articulate how the production of potentially exculpatory evidence by Canada, if any were to exist, might be *admissible* at the extradition hearing, given the narrow meaning that the terms "explanatory" and "negate" hold in the context of extradition proceedings.

Headley relies upon the Sixth Circuit case of *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993), for the argument that the principles of *Brady* applied as a matter of right in extradition proceedings. In *Demjanjuk*, representatives of the United States failed to disclose that their own investigation had developed evidence that cast doubt upon Demjanjuk's identification as "Ivan the Terrible," a notorious guard at a Nazi extermination camp who had been extradited to Israel. *Id.* at 340-42. While the *Demjanjuk* court held that *Brady* applied to extradition cases, the holding of that case had been severely limited by the subsequent Sixth Circuit decision from *In re Extradition of Drayer*, 190 F.3d 410 (6th Cir. 1999), an appeal from the denial of a broad discovery demand in a Canadian extradition case. Drayer sought an order requiring the production of Canadian evidence that he contended was exculpatory. Affirming the magistrate's denial of Drayer's discovery motion, the Sixth Circuit opinion distinguished *Demjanjuk* on the basis that "in *Demjanjuk*, the United States had conducted its own investigation of the offense underlying the request for extradition and uncovered exculpatory material in the course of that effort. . . . No such investigation occurred here . . . ." *Id.* at 414.

Similarly here, the United States has not independently investigated the crimes for which Canada seeks Headley's extradition. The United States has provided the formal extradition request and accompanying documents from Canada to the Court and counsel and will move those

6

materials into evidence at the hearing itself. Canada has no *Brady* obligation in an extradition proceeding. Consistent with the scope of the extradition hearing, the provision of exculpatory materials rests with the requesting country at the time proceedings on the merits go forward in that country. It is there that trial defenses are considered and decisions on competing and contradictory facts are made. *Oen Yin-Choy*, 858 F.2d at 1407 ("[A] defendant has no right to cross-examine witnesses or introduce evidence to rebut that of the prosecutor.").

This principle does not mean that at the formal hearing, this Court must blindly accept the conclusions of Canada as to the existence of probable cause. Even accepting the proffered evidence as true, the Court must decide its weight and sufficiency and make an independent determination whether probable cause has been shown. However, determinations of the competence and reliability should be made on the basis of the record presented by the requesting country. *See In re Extradition of Singh*, 124 F.R.D. 571, 577 (D.N.J. 1987) (denying request for depositions intended to uncover evidence affecting credibility or reliability of affidavits supporting extradition). "The improbability or the vagueness of the testimony [presented by the requesting country] may destroy the probability of guilt, but the tendering of witnesses who testify to an opposite version of the facts does not. The latter must await trial on the merits." *Shapiro v. Ferrandina*, 355 F. Supp. 563, 572 (S.D.N.Y. 1973), *aff'd as modified*, 478 F.2d 894 (2d Cir. 1973).

**WEREFORE,** the undersigned respectfully requests that this Court deny Headley's

Motion to Compel Discovery in this extradition.

                                      Respectfully submitted,

                                      ARIANA FAJARDO ORSHAN
                                      UNITED STATES ATTORNEY

                                  s/   LOTHROP MORRIS
                            By: LOTHROP MORRIS
                                ASSISTANT U.S. ATTORNEY
                                Florida Bar # 0095044
                                500 Australian Avenue, Suite 400
                                West Palm Beach, FL 33401
                                (561) 820-8711
                                (561) 820-8777 (FAX)
                                LOTHROP.MORRIS@USDOJ.GOV

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 18, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: s/   LOTHROP MORRIS
LOTHROP MORRIS
ASSISTANT U.S. ATTORNEY